**TUMMURRU TRADES, INC., Petitioner,**

v.

**UTAH STATE TAX COMMISSION, Respondent.**

No. 890209.

Supreme Court of Utah.

Sept. 19, 1990.

Rehearing Denied Dec. 12, 1990.

J. Jay Bullock, Salt Lake City, for Tummurru Trades, Inc.

R. Paul Van Dam, James Harward, Brian L. Tarbet, Stephen G. Schwendiman, Salt Lake City, for State Tax Com'n.

Rick Carlton, Salt Lake City, for Tax & Business Regulation Div.

HALL, Chief Justice.

Tummurru Trades, Inc. (Tummurru), seeks review of a final decision of the Utah

State Tax Commission (Tax Commission) requiring the payment of sales tax on items that were sold to out-of-state purchasers in its retail and wholesale construction supply store and for items that were purchased for construction at out-of-state sites. The Tax Commission also imposed a statutory penalty upon Tummurru and interest on the unpaid sales tax over the audit period.

Tummurru is a Utah corporation with its principal place of business in Hilldale, Utah. Tummurru is in the business of constructing modular buildings and wholesale and retail sales of building materials.

The audit period covered in this case extends from October 1, 1984, through September 30, 1987. During the audit period, Tummurru made a number of sales to out-of-state customers which were delivered to those customers by Tummurru's agents. In addition, many of the sales to out-of-state customers were picked up by the customers at Tummurru's place of business. The total amount of these sales was $145,592.59.

Tummurru also purchased building materials for use on construction projects undertaken at out-of-state locations. Neither the amount paid by Tummurru for these materials, $576,841.17, nor the out-of-state locations of the projects are in dispute.

Tummurru also asserts that many of its sales were to customers who had, in the past, provided documentation that they were exempt from sales tax for purposes of resale. The total amount of the resale items was $75,793.42.

After completing the audit, the State Tax Division of Utah ("the division") sent a notice of deficiency to Tummurru on January 29, 1988. Tummurru filed a petition for redetermination with the Tax Commission, which issued its final ruling on April 26, 1989. The Tax Commission determined that Tummurru's sales of materials to out-of-state customers were not exempt under any Utah Code provision and that the sales did not meet the requirements of selling goods in interstate commerce.[1] The Tax Commission ordered Tummurru to pay the sales tax owed under the deficiency notice, plus interest, and levied a civil penalty for failure to pay the sales taxes. On May 8, 1989, Tummurru filed a petition for reconsideration, which was denied on June 21, 1989.

Tummurru presents five issues on appeal involving whether without exemption certificates required by statute, Tummurru is liable for Utah sales tax where (1) a sale to an out-of-state customer was delivered to the customer by Tummurru or its agent; (2) a sale to an out-of-state customer was picked up by the customer within the state; (3) materials were purchased by Tummurru for use in connection with a real property construction contract at an out-of-state site; (4) sales were made to certain entities for resale. The final issue is whether Tummurru is liable for the statutory negligence penalty arising from its failure to pay the sales taxes.

## I.  EXEMPTION CERTIFICATES

It is undisputed that Tummurru is engaged in the business of selling building and construction merchandise and is therefore subject to sales tax on items sold.[2] Indeed, the vendor is responsible for the collection of the sales tax.[3]

---

1. *Tummurru Trades, Inc. v. Auditing Div. of the Utah State Tax Comm'n,* No. 88–1254 (April 26, 1989).

2. Utah Code Ann. § 59–12–103(1)(a) and (*l*) (1987) states:

   (1) There is levied a tax on the purchaser for the amount paid or charged for the following:
   (a) retail sales of tangible personal property made within the state;
   . . .;

(*l*) tangible personal property stored, used, or consumed in this state.

3. Utah Code Ann. § 59–12–107(1)(a) and (b) (1987) states:

   (1)(a) Each vendor is responsible for the collection of the sales or use tax imposed under this chapter.
   (b) The vendor is not required to maintain a separate account for the tax collected, but is deemed to be a person charged with receipt, safekeeping, and transfer of public moneys.

In the instant case, Tummurru argues that the sale of items purchased by out-of-state customers and items purchased for resale were exempt from sales tax under Utah Code Ann. § 59–12–104(12) and (28) (1987), which states:

> The following sales and uses are exempt from the taxes imposed by this chapter:
>
> . . .;
>
> (12) sales or use of property which the state is prohibited from taxing under the Constitution or laws of the United States or under the laws of this state;
>
> . . .;
>
> (28) property purchased for resale in this state, in the regular course of business, either in its original form or as an ingredient or component part of a manufactured or compounded product. . . .

The Tax Commission promulgated R865–44S, which delineates the scope of section 59–12–104(12) and states in pertinent part:

> A. Sales made in interstate commerce are not subject to the sales tax imposed. However, the mere fact the commodities purchased in Utah are transported beyond its boundaries is not enough to constitute the transaction of a sale in interstate commerce. When the commodity is delivered to the buyer in this state, even though the buyer is not a resident of the state and intends to transport the property to a point outside the state, the sale is not in interstate commerce and is subject to tax.
>
> B. Before a sale qualifies as a sale made in interstate commerce, the following must be complied with:
>
> 1. The transaction must involve actual and physical movement of the property sold across the state line;
>
> 2. Such movement must be an essential and not an incidental part of the sale;
>
> 3. The seller must be obligated by the express or unavoidable implied terms of the sale, or contract to sell, to make physical delivery across a state boundary to the buyer. . . . [4]

Even if a vendor's sales qualify in all respects as sales in interstate commerce, the vendor must comply with Utah Code Ann. § 59–12–106(2) (1987) in order to exempt the sale from sales tax. Section 59–12–106(2) states:

> For the purpose of the proper administration of this chapter and to prevent evasion of the tax and the duty to collect the tax, it shall be presumed that tangible personal property or any other taxable item or service under Subsection 59–12–103(1), sold by any person for delivery in this state is sold for storage, use, or other consumption in this state unless the person selling such property, item, or service has taken from the purchaser an exemption certificate signed by and bearing the name and address of the purchaser to the effect that the property, item, or service, was exempted under § 59–12–104. The exemption certificates shall contain information as prescribed by the commission.

Indeed, under R865–23S, the Tax Commission expressly outlined the requirements for exemption pursuant to section 59–12–106(2) as follows:

> Taxpayers selling tangible personal property or services to exempt customers are required to keep records verifying the nontaxable status of such sales.
>
> Records shall include:
>
> 1. sales invoices showing the name and identity of the customer, and
>
> 2. exemption certificates for exempt sales of tangible personal property or services if the exemptions category is shown on the exemption certificate forms.
>
> . . . .
>
> E. The burden of proving that a sale is for resale or otherwise exempt is upon the person who makes the sale. If any agent of the Tax Division requests the vendor to produce a valid exemption certificate or other similar acceptable evi-

---

4. Utah Admin.Code R865–44S (1987–88).

dence to support the vendor's claim that a sale is for resale or otherwise exempt, and the vendor is unable to comply, the sale will be considered taxable and the tax shall be payable by the vendor.[5]

■ It is clear from the record that Tummurru failed to keep adequate records with regard to its sales and that it was unable to produce the necessary exemption certificates. The purpose for the statutory requirement that merchants keep records of their sales and exemptions is to prevent tax evasion and tax fraud. In the instant case, the Tax Commission properly determined that where Tummurru could not uphold its burden of proving that the sales were made in interstate commerce or for resale by providing records of exemption certificates, the sales tax would be levied. Tummurru's failure to keep records necessarily requires this result because oral testimony is not an adequate substitute for accurate record keeping.

## II. ITEMS PURCHASED IN UTAH BUT TRANSPORTED OUT OF STATE TO BE USED IN CONSTRUCTION

Tummurru's next assertion is that it is not liable for sales taxes on items that its construction entity purchased and acquired from Tummurru's inventory to be used in construction projects out of the state. In many cases, the items used by Tummurru were modular units constructed in Utah, transported out of the state, and used by Tummurru in its capacity as the contractor on the construction project. The issue, therefore, is whether a contractor who purchases items in Utah to be used in an out-of-state project must pay sales tax on those items.

■ It has long been the law in Utah that the sales tax is levied upon the ultimate consumer.[6] The crux of the issue in the instant case is whether a contractor is considered the ultimate consumer when the items purchased will be converted from personal property into real property. In *Utah Concrete Products Corp. v. State Tax Commission,*[7] this court stated: "From the context of our statute 'used' and 'consumed' may be said to express the same meaning—to make use of, to employ, and does not necessarily mean the immediate destruction or extermination or change in form of the article or commodity."[8] In distinguishing contractors from manufacturers of other items, the *Utah Concrete* court stated:

[I]n the instant case, contractors purchase the pipes, culverts and cinder blocks for the purpose of using and consuming them by incorporating them as one of many units which go to make up buildings, structures, or roads, as the case might be, and not for reselling them as such in their original form, but for the purpose of changing their very nature from personal to real property. In short, labor and many other materials enter along with the plaintiffs' products to make up the particular structure, and they are all used or consumed in the process of producing a new entity.[9]

Consequently, the *Utah Concrete* court concluded that contractors were the ultimate consumers of the items they purchase for incorporation into various forms of real property.[10]

---

5. Utah Admin.Code R865–23S (1987–88).

6. *See, e.g., Ralph Child Constr. Co. v. State Tax Comm'n,* 12 Utah 2d 53, 362 P.2d 422 (1961).

7. 101 Utah 513, 125 P.2d 408 (Utah 1942).

8. 125 P.2d at 410.

9. *Id.*

10. *Id.* at 411; *see also Hardy v. State Tax Comm'n,* 561 P.2d 1064, 1065 (Utah 1977); *Ol-son Constr. Co. v. State Tax Comm'n,* 12 Utah 2d 42, 361 P.2d 1112, 1113 (1961).

We note that the 1989 amendments to Utah Code Ann. § 59–12–104 added subsection (34), which exempts "sales of tangible personal property to persons within this state that is subsequently shipped outside the state and incorporated pursuant to contract into and becomes a part of real property located outside of this state...." Because this subsection of the code was amended after the date the issues arose in the instant case, we do not consider it a ruling statute.

Because Tummurru took possession of the items within the state of Utah and title passed within the state, it became the ultimate consumer for sales tax purposes.[11] The fact that the items would be incorporated into real property located out of the state does not change the nature of Tummurru's consumer use of the items.

Utah Administrative Code R865–58S was promulgated to address this very issue. It states:

A. Sale of tangible personal property to real property contractors and repairmen of real property is generally subject to tax.

1. The person who converts the personal property into real property is the consumer of the personal property since he is the last one to own it as personal property.

2. The contractor or repairman is the consumer of tangible personal property used to improve, alter or repair real property; regardless of the type of contract entered into—whether it is a lump sum, time and material, or a cost-plus contract.

. . . .

C. Sales of materials and supplies to contractors for use in out-of-state jobs are taxable unless sold in interstate commerce in accordance with Rule R865–44S.[12]

▆▆▆ The purchases in the instant case are taxable in Utah because Tummurru failed to demonstrate that the sales were made in interstate commerce. Utah Administrative Code R865–44S states as one of the requirements to qualify as interstate commerce: "3. [T]he seller must be obligated by the express or unavoidable implied terms of the sale, or contract to sell, to make physical delivery across a state boundary to the buyer . . . ."

In the instant case, the seller was Tummurru and the buyer was the contracting arm of Tummurru. The act of taking the items out of inventory for use in a construction contract is a retail sale for the purpose of sales tax because the contractor is the ultimate consumer, Tummurru was not obligated by any contract to make physical delivery across state boundaries to its own contracting arm, and Tummurru's contracting arm took possession and title to the items in Utah. Tummurru is therefore liable for the sales tax due on those items sold to its contracting entity for use in out-of-state construction projects.

### III. PENALTY FOR NONPAYMENT

Tummurru's only assertion with regard to the penalty assessed by the Tax Commission is that the failure to pay the sales taxes was the result of a good faith belief that the transactions did not require the payment or were exempt. Utah Code Ann. § 59–12–107(18) (1987) states:

(18) Any person failing to pay any tax to the state or any amount of tax required to be paid to the state, except amounts determined to be due by the commission under §§ 59–12–110 and 59–12–111, within the time required by this chapter, or file any return as required by this chapter, shall pay, in addition to the tax, penalties and interest as provided in Section 59–12–110.

Section 59–12–110(4) states: "If the amount paid is less than the amount due, interest at the rate prescribed in § 59–1–402 shall be added to the difference due computed from the time the return was due." Section 59–1–402 states: "The rate of interest applicable to any tax provision administered directly by the commission is 12% annually."

▆▆▆ The penalty assessed due to the failure to collect and pay sales tax is pre-

---

**11.** *See, e.g., State Tax Comm'n of Utah v. Pacific States Cast Iron Pipe Co.,* 372 U.S. 605, 606, 83 S.Ct. 925, 925, 10 L.Ed.2d 8 (1962) (states may levy and collect sales taxes where passage of title and delivery to the purchaser took place within the state); *International Harvester Co. v. Department of Treasury,* 322 U.S. 340, 345, 64 S.Ct. 1019, 1021, 88 L.Ed. 1313 (1944).

**12.** Utah Admin.Code R865–58S (1987–88).

scribed in section 59–1–401(3)(a) and states in pertinent part: "The penalty for underpayment of tax is as follows: (a) If any underpayment of tax is due to negligence the penalty is 10% of the underpayment." The Tax Commission found that Tummurru's failure to collect and pay the sales taxes was due to negligence. It is within the discretion of the Tax Commission whether to assess penalties for failure to pay taxes.[13] The findings of the Tax Commission will not be overturned on appeal unless the party challenging the findings can show that they are contrary to law or otherwise erroneous.[14]

Tummurru has not upheld its burden on appeal to show that the Tax Commission erred with regard to the assessment of the sales taxes, interest, and penalties. The decision and order of the Tax Commission are affirmed.

HOWE, Associate C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

**13.** See Robert H. Hinckley, Inc. v. State Tax Div., 17 Utah 2d 70, 404 P.2d 662, 669 (Utah 1965).

**14.** See, e.g., Benevolent and Protective Order of Elks No. 85 v. Tax Comm'n, 536 P.2d 1214, 1219 (Utah 1975); Butler v. State Tax Comm'n, 13 Utah 2d 1, 367 P.2d 852, 853 (1962); McKendrick v. State Tax Comm'n, 9 Utah 2d 418, 347 P.2d 177, 178 (1959).