**CHICAGO BRIDGE & IRON COMPANY, Petitioner,**

v.

**STATE TAX COMMISSION, Respondent.**

No. 910265.

Supreme Court of Utah.

Sept. 30, 1992.

---

R. Paul Van Dam, Leon A. Dever, Salt Lake City, for Utah State Tax Com'n.

Ronald G. Moffitt, Robert A. Peterson, Salt Lake City, for Chicago Bridge and Iron.

STEWART Justice:

This case is here on a petition to review an order of the Utah State Tax Commission assessing sales taxes and a penalty against Chicago Bridge and Iron (CBI).

CBI is an Illinois corporation. A division of CBI operates a steel fabricating facility in Salt Lake City, Utah, where it designs and fabricates large steel storage tanks, pressure vessels, and mixing tanks that, in most cases, CBI installs on a purchaser's land. CBI purchases the steel plates and materials used in the fabrication of its tanks from Utah vendors. The buyers of the tanks custom order them and pay a price that includes the cost of the materials, fabrication, transportation and, when called for, installation. Because the tanks are large, CBI often ships the component parts to the customer's location, where a separate CBI division assembles the tanks on the customer's property.

During the period in question, CBI did not pay sales tax on the steel plates and materials it purchased in Utah. When CBI installed the tanks, it billed its customers for the sales or use taxes imposed by the state in which the tanks were installed and remitted those taxes to that state.

On February 29, 1984, the Auditing Division of the Tax Commission sent CBI a letter stating its position with respect to a previous assessment on the sale of the tanks. The letter reported that the assessment had been resolved in CBI's favor, "with the understanding that in the future [CBI] will pay Utah tax on any purchases from Utah vendors and any materials withdrawn from a common inventory without regard to the eventual state of use." CBI did not, however, pay taxes on subsequent Utah transactions, and in April 1989, the Auditing Division assessed CBI a deficiency of $934,369.94 for taxes, interest, and penalties for the purchase of steel materials between October 1, 1983, and December 31, 1985.

On petition for redetermination, the Commission found that CBI's Utah plant " 'manufacture[s]' the products made from the sheets of steel it purchases from various vendors located within and without the state of Utah," and held that CBI's installation of the tanks on a purchaser's real estate made CBI a real property contractor. The Commission ruled:

Although the Petitioner may indeed be engaged in manufacturing at its Salt Lake facility, the activities in that facility [are] but one of a number of different activities that the Petitioner is engaged in, which, when acting in concert with one another, show the Petitioner in its overall operation to be a "real property contractor."

Accordingly, the Commission held that CBI was liable for the payment of sales taxes for the purchase of steel materials from Utah vendors in those instances where CBI was in fact obligated by a sales contract to install the tanks. The Commission rejected CBI's argument that it was subject to double taxation because California imposed sales and use taxes on tanks installed in California pursuant to *Chicago Bridge & Iron Co. v. Johnson,* 19 Cal.2d 162, 119 P.2d 945 (1941) (per curiam).

In ruling on CBI's request for reconsideration, the Commission affirmed its original findings of fact and conclusions of law and imposed a 15% penalty on CBI "based upon the Petitioner's apparent intentional disregard of law or rule as made known to it by way of the letter from the Commission dated February 29, 1984."

On appeal, CBI reasserts its contention that Utah sales taxes should not have been assessed on the purchases from Utah vendors of steel materials used in the fabrication of tanks sold, assembled, and installed on real property in other states. CBI also challenges the validity of the 15% penalty.

## SALES TAX ASSESSMENT

The tax assessment period in question runs from October 1, 1983, to December 31, 1985. The laws then in effect govern this dispute.

Sales taxes are imposed on retail sales of tangible personal property that take place in Utah. Utah Code Ann. § 59–15–4(a) (Supp.1984 & Supp.1985). Use taxes are imposed on the storage, use, or consumption of tangible personal property purchased outside the state for storage, use, or consumption in Utah. Utah Code Ann. § 59–16–3(a) (Supp.1985).

■ The statutory scheme does not, however, impose sales or use taxes on tangible personal property used as an ingredient or a component part of personal property manufactured by one engaged in the business of manufacturing. Utah Code Ann. §§ 59–15–2(g), 59–16–3(g) (Supp.1985). When purchasing raw materials, a manufacturer does not engage in a retail sales transaction. The theory of the statutory scheme is that tangible personal property used in manufacturing or fabrication should be taxed once, and only once. That one-time taxable event occurs when the sales tax is levied on the price of the finished product sold at retail, since the value of the component parts is included in that price.

■ However, when tangible personal property is sold for incorporation into real property, as opposed to another item of personal property, different rules apply. For example, one who purchases building materials for use in constructing homes, highways and the like, is a "real property contractor." The contractor's purchases of tangible personal property used for such purposes are taxable transactions under the sales tax law. *See Tummurru Trades, Inc. v. State Tax Comm'n,* 802 P.2d 715 (Utah 1990); *Barrett Inv. Co. v. State Tax Comm'n,* 15 Utah 2d 97, 387 P.2d 998 (1964); *Ralph Child Constr. Co. v. State Tax Comm'n,* 12 Utah 2d 53, 362 P.2d 422 (1961); *Olson Constr. Co. v. State Tax Comm'n,* 12 Utah 2d 42, 361 P.2d 1112 (1961); *Utah Concrete Products Corp. v. State Tax Comm'n,* 101 Utah 513, 125 P.2d 408 (1942). In effect, a real property contractor is treated as a consumer for sales tax purposes.

The reason for this rule is that materials purchased and then converted into real property would escape the sales tax because a sales tax is not imposed on the sale of real property. Real property contractors are treated as consumers because their purchases of materials that are incorporated into real property are the last transactions in which those materials can be subjected to the sales tax. Even if a real property contractor incorporates the materials into real property in another state, the purchase of those materials in Utah is still taxable. *Tummurru,* 802 P.2d at 718–19.

CBI argues that the Commission erred in ruling that it is a real property contractor. CBI contends that the tanks it manufactures are tangible personal property and that the installation of the tanks on real property does not make CBI a real property contractor.

■ The test for determining whether a person is a real property contractor is based not only on who converts tangible personal property into real property, but also on the nature of the transaction. In *BJ–Titan Services v. State Tax Commission,* 183 Utah Adv.Rep. 20, 25 (March 31, 1992), we held that the provider of oil and gas well stimulation services, who injected

cement into wells, was not a real property contractor, but a retailer of the cement. The provider, therefore, was liable for sales tax on the sale of the cementing services to the well operator, even though the cement became affixed to the real property. We stated:

> The well operator contracts with BJ–Titan to obtain a concrete anchor around the well casing which stabilizes the well and isolates zones of production identified by the operator. The operator provides BJ–Titan with all the necessary well data and runs the cementing equipment down the bore. In essence, the well operator purchases a certain amount of cement at a certain location in the well. It does not seek to purchase real property, nor does the cement become inseparably meshed into a greater facility which itself is the object of the transaction. From the standpoint of the well operator, who may or may not own the well, the cement has not lost its identity as tangible personal property.

The well operator was the ultimate consumer. In *Nickerson Pump & Machinery Co. v. State Tax Commission*, 12 Utah 2d 30, 361 P.2d 520 (1961), this Court held that a fabricator and installer of large pumps was not a real property contractor because the installation of pumps on real property did not convert the pumps from personal property to real property for purposes of sales tax law. Accordingly, Nickerson Pump was liable for sales taxes on the sale of the pumps. The Court based that conclusion on several factors: (1) The pumps were removable without harm to the structures on which they were placed; (2) they were manufactured with the idea that they could be used at different locations; (3) the parties contemplated that the pumps would be removed for repairs or replacement; (4) the primary purpose of the sales agreements was the sale and purchase of the pumps assembled according to specifications and the installation of the pumps was merely incidental to that purpose; (5) the installation was for the convenience of the purchaser because of the great weight of

the pumps; and (6) the sales agreements did not indicate that the pumps were intended to be treated as real property upon installation. *Id.* at 522. *Nickerson* provides some guidance here, although the issue in this case is whether a fabricator is liable for sales taxes on its purchase of constituent materials, and not on the sale of the fabricated product, as in *Nickerson*.

■ Whether the subject matter of a sales transaction is deemed real property or tangible personal property will depend on the facts of each case. The weighing of the various relevant factors leading to the ultimate decision of whether a taxpayer is a real property contractor is a ruling that is based in part on law and in part on fact. In ruling on such issues, the Commission necessarily exercises a degree of discretion, and we accordingly defer to the Commission's determination. We will not upset its ruling unless it is unreasonable or arbitrary. *See* Utah Code Ann. § 63–46b–16(4)(h)(i) (1989); *BJ–Titan; Morton Int'l, Inc. v. Auditing Div. of Utah State Tax Comm'n*, 814 P.2d 581, 588 (Utah 1991).

■ Under its sales contracts, CBI fabricates, erects, and installs its tanks on its customers' real property for a lump sum. The assembly and installation of the tanks are essential parts of each contract. Because of the large size of the tanks, they are not readily removable and it is not intended that they be moveable or removed. The Commission's ruling that the installed tanks, once attached, are real property and that CBI is a real property contractor is not unreasonable.

■ CBI does not dispute any of the factual findings. It argues, however, that because its activities in Utah are those of a manufacturer or fabricator, it is entitled to a sales tax exemption on the prices it paid for the materials and component parts used in fabricating its final product. Whether a purchaser of personal property is a real property contractor does not depend solely on the activities of the purchaser occurring within Utah; rather, the nature of the purchaser's resale transactions must also be

examined, even if they occur outside Utah. *See Tummurru,* 802 P.2d at 718–19. Here, CBI's customers intended to purchase fully assembled tanks permanently installed on real estate. Whether that real estate was located in this or another state is not relevant as to CBI's status as a real property contractor.

CBI also argues that imposing Utah sales tax on CBI's purchases of steel materials in Utah subjects CBI to taxation by two states on the same transaction, that is, taxation by Utah and taxation by the state where the tanks are installed. CBI contends that this amounts to double taxation in violation of the commerce clause of the United States Constitution.

In support of its position, CBI relies on *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), and *Goldberg v. Sweet,* 488 U.S. 252, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989). In our view, those cases do not control the issue here. Those cases dealt with the constitutionality of different types of taxes that call into play different legal principles.

*Complete Auto Transit* involved a Mississippi statute that imposed a tax "for the privilege of ... doing business" in the state. The company that the state taxed was engaged in interstate commerce. The United States Supreme Court upheld Mississippi's tax and overruled an earlier case, *Spector Motor Service, Inc. v. O'Connor,* 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951), which held that a state tax on the privilege of doing business was per se unconstitutional when applied to interstate commerce. Cases following *Complete Auto* have established a four-part test for determining when a tax will be sustained against a commerce clause challenge:

> [A] state tax will withstand scrutiny under the Commerce Clause if "[ (1) ] the tax is applied to an activity with a substantial nexus with the taxing State, [ (2) ] is fairly apportioned, [ (3) ] does not discriminate against interstate commerce, and [ (4) ] is fairly related to the services provided by the State."

*Goldberg v. Sweet,* 488 U.S. at 257, 109 S.Ct. at 586 (quoting *Complete Auto Transit,* 430 U.S. at 279, 97 S.Ct. at 1079).

■ This test does not apply to the instant case because Utah did not tax an out-of-state transaction or even a transaction in interstate commerce. *See McLeod v. J.E. Dilworth Co.,* 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304 (1944). The transactions Utah taxed were CBI's purchases of steel materials from Utah vendors. The transactions occurred solely within this state, and the goods that were subject to the transactions were all used within the state by the taxpayer. Utah did not tax the use of a particular product manufactured outside the state but used within the state, *see, e.g., D.H. Holmes Co. v. McNamara,* 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988), nor did it tax a sale in another state. The installation of the finished tanks in other states does not affect the local nature of the sales transactions, nor does it make CBI's purchase of materials in Utah subject to apportionment, even though CBI paid a use tax to the state where the tanks were assembled and installed.

CBI argues that because California may impose a use tax when the tanks are installed in California, imposition of the Utah sales tax may result in double taxation. This argument is based on a 1941 California Supreme Court ruling that steel materials purchased by CBI from out-of-state sources for use in the fabrication of tanks in California or for inventory for use in California as business required were subject to the California use tax. *Chicago Bridge & Iron Co. v. Johnson,* 19 Cal.2d 162, 119 P.2d 945 (1941) (per curiam).

■ The short answer to CBI's argument lies in the Multistate Tax Compact. Both Utah and California are members of the Multistate Tax Commission, and both have adopted the Multistate Tax Compact. Utah Code Ann. § 59–22–1 (1974 & Supp. 1985) (currently codified at Utah Code Ann. § 59–1–801 (1987)); Cal.Rev. & Tax.Code §§ 38001, 38006 (West 1979 & Supp.1992). Article V of the Compact provides:

> Elements of Sales and Use
> Tax Laws Tax Credit
>
> 1. Each purchaser liable for a use tax on tangible personal property shall be

entitled to full credit for the combined amount or amounts of legally imposed sales or use taxes paid by him with respect to the same property to another State and any subdivision thereof. The credit shall be applied first against the amount of any use tax due the State, and any unused portion of the credit shall then be applied against the amount of any use tax due a subdivision.

Under this article, California, in imposing a use tax, must give credit against that tax for any Utah sales tax levied, since "precedence in liability shall prevail over precedence in payment." *Resolution of Multistate Tax Commission* (1980). Accordingly, the imposition of the Utah sales tax in this case should not result in double taxation. If it does, the remedy lies in the state that seeks to impose a tax having that effect.

### PENALTY

CBI asserts that the Commission erred in imposing a 15% penalty pursuant to Utah Code Ann. § 59–1–401(3)(b) (1987). That provision states, "If any underpayment of tax is due to intentional disregard of law or rule, the penalty is 15% of the underpayment." The Commission ruled that CBI was guilty of "intentional disregard of law or rule as made known to it by way of the letter from the Commission dated February 29, 1984."

Although CBI did not comply with the Commission's demand in the February 29 letter, we do not believe that constituted an "intentional disregard of law or rule" as that term is used by the statute. When the letter was sent, CBI's status as a real property contractor was arguable. Indeed, the Commission states in its brief, "The letter evidences a long standing disagreement between the Auditing Division and Petitioner regarding Utah sales tax."

The Utah tax laws establish procedures for resolving good faith disputes between the Commission and taxpayers. *See* Utah Code Ann. §§ 59–30–1 to –5 (Supp. 1985) (currently §§ 59–1–501 to –505 (1987 & Supp.1991)). The Commission cannot base a finding of "intentional disregard of

law or rule" merely on a letter written to a taxpayer asserting the Commission's position on an arguable question of law. The Commission's letter did not constitute a rule or law, and CBI's disregard of the letter did not, therefore, constitute an intentional disregard of the law. In our view, the dispute as to CBI's liability for sales taxes was a good faith dispute, even though CBI's position was wrong. Whether a taxpayer is a real property contractor for sales tax purposes usually is fact sensitive. The issue in this case turned on facts that reasonably support either party's position. In addition, the taxes were imposed for transactions that occurred beginning October 1, 1983, five months before the date of the letter. In short, the Commission erred in imposing the penalty.

The tax assessment is affirmed. The imposition of the penalty is reversed.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.