860 P.2d 324 (1993)
THORUP BROTHERS CONSTRUCTION, INC., Petitioner,
v.
AUDITING DIVISION of the UTAH STATE TAX COMMISSION, Respondent.
No. 920184.
Supreme Court of Utah.
September 15, 1993.
*325 Bill Thomas Peters, Salt Lake City, for petitioner.
R. Paul Van Dam, Atty. Gen., Clark L. Snelson, Asst. Atty. Gen., for respondent.
DURHAM, Justice:
Thorup Brothers Construction, Inc., asks us to review an order of the Auditing Division of the Utah State Tax Commission assessing $26,328.30 in additional sales tax plus interest. We reverse.
In 1987, the Catholic Diocese of Salt Lake City contracted with Thorup Brothers Construction, Inc. (Thorup), to construct an addition to Judge Memorial Catholic High School, a tax-exempt entity under Utah Code Ann. § 59-12-104(8) (Supp.1993), which is owned and operated by the Diocese. (The Diocese and Judge Memorial will be referred to collectively as Judge Memorial.) Thorup agreed to build an auditorium, a music room, and locker rooms. In return, Judge Memorial agreed to pay Thorup for its labor and purchased material costs plus sales tax. Judge Memorial specifically reserved the right to donate construction materials to the project[1] and Thorup agreed to credit Judge Memorial for those materials. Consistent with this agreement, Judge Memorial issued purchase orders totalling $374,102 based on Thorup's detailed materials lists.
To support the project, Judge Memorial also contracted with Scott, Louie & Browning Architects (Scott). Both Scott and Thorup entered into subcontracts. Scott also hired The Rhoads Company, Inc., to *326 conduct the ongoing inspection of the project's masonry work. In addition, Judge Memorial hired E.W. Allen and James S. Bailey as structural engineers for the project. Finally, James Maher, a member of Judge Memorial's Board of Financial Trustees and an engineer, volunteered to oversee the project, make periodic engineering calculations, and offer engineering suggestions concerning construction.
Throughout the construction process, vendors delivered the purchased materials to the construction site where the materials were then received, inspected, and stored. Either Judge Memorial, a contractor, or a subcontractor received the materials prior to use. The vendors sent invoices to Thorup or the subcontractor for approval before sending them on to Judge Memorial, which then issued checks directly to the supplier. The costs for construction materials purchased directly by Judge Memorial with and without purchase orders totalled $422,226, excluding sales tax. Thorup credited Judge Memorial for $447,581, the amount of actual material costs plus sales tax as included in Thorup's contract bid. To protect its interest in these materials against the risk of loss, Judge Memorial obtained insurance in its name through Pacific Employers Insurance Company.[2] Judge Memorial also obtained warranties on these materials which ran to it, and it retained and stored surplus materials for use in repairs and replacements on the building.
In 1989, the Auditing Division (the Division) of the Utah State Tax Commission (the Commission) audited Thorup's tax records and determined that Thorup should be assessed additional sales tax of $26,328.30 plus interest on materials purchased for the Judge Memorial capital improvement project. The Division concluded that under rule 865-19-58S,[3] the sales tax was properly assessed to Thorup because it converted the purchased materials into real property and was therefore the ultimate consumer. Thorup filed a petition for redetermination in which it asserted that Judge Memorial was the direct purchaser of the materials and, as such, enjoyed tax-exempt status as the final consumer.
In 1991, the Commission held a hearing, and on March 10, 1992, it denied the petition for redetermination and affirmed the Division's assessment based on its findings of fact and conclusions of law. In response to the Commission's final decision, on April 9, 1992, Thorup filed a petition for a writ of review.
Thorup asserts that the Commission erred in determining that Thorup is liable for sales tax on personal property that Judge Memorial purchased directly. Thorup contends that article XIII, section 2 of the Utah Constitution[4] confers tax-exempt status on Judge Memorial. Thorup also argues that the constitution should not be abrogated by agency rules that impute ownership to Thorup as the ultimate consumer of the personal property. We thus consider whether the Commission properly identified Thorup as the final consumer of *327 construction materials that Judge Memorial purchased directly.[5]
Because Thorup challenges an agency adjudication, the Utah Administrative Procedures Act, Utah Code Ann. §§ 63-46b-1 to -22 (UAPA), governs the court's review of the Commission's determinations. In this case, UAPA allows the court to grant Thorup relief if the court finds that the agency action is "contrary to a rule of the agency." Utah Code Ann. § 63-46b-16(4)(h)(ii) (1989).[6] The court will apply an intermediate-deference, reasonableness and rationality standard of review. See SEMECO Indus. v. State Tax Comm'n, 849 P.2d 1167, 1174 (Utah 1993) (Durham, J., dissenting).
Thorup challenges the Commission's determination that because Thorup converted construction materials into real property, it is the ultimate consumer and subject to a sales tax on those materials. We will reverse the Commission's determination if we find that it was not reasonable and rational. Union Pacific R.R. v. Auditing Div., 842 P.2d 876, 879 (Utah 1992). Applying that standard, we conclude that the Commission erred.
Under its delegated authority, the Commission apparently promulgated rule 865-19-58S to interpret the scope of Utah Code Ann. § 59-12-103 and to set guidelines for imposing the sales tax.[7] The Commission's guidelines for defining "consumer" are found in rule 865-19-58S. Section A and subsection 1 of the rule subject real property contractors such as Thorup to sales tax when they purchase and own tangible personal property that they will convert to real property in the construction process. The guidelines further define the purchaser/contractor as the consumer of personal property converted into real property because "he is the last one to own it as personal property." Utah Admin.R. XXX-XX-XXS(A)(1) (1993). Thus, ownership is key in identifying the final consumer.
We hold that Thorup is not the final consumer under the Commission's guidelines because it never purchased or owned the construction materials in question.[8] *328 The record reveals that Judge Memorial assumed risks and responsibilities sufficient to establish ownership in connection with the materials in question. The Commission's own criteria for identifying an exempt sale establish that Judge Memorial was the actual and constructive purchaser because it (1) directly issued purchase orders for materials, (2) issued checks for materials directly to vendors, (3) took title in its own name, (4) inspected and stored the materials on its own property, (5) insured those materials, (6) assured that associated warranties ran to itself, (7) exercised direct supervision, and (8) explicitly reserved in its contract with Thorup the right to purchase and donate any materials to the project that it chose. Thus, Judge Memorial not only took legal title to the materials with the associated right to their use, enjoyment, and control, but it also assumed the burden of risk. For example, had the materials been lost in a fire or had the project ended before completion, then Judge Memorial presumably would have been required to absorb the related costs.[9] Thorup would have lost nothing for its work completed to that point.[10]
We are not persuaded by the Commission's contention that Utah law defines a contractor who converts tangible personal property into real property as the ultimate consumer for sales tax purposes. The Commission reasons that when a third party such as Thorup converts or "consumes" the property in the construction process, tax liability is warranted "because [contractors] are the last persons in the chain to deal with such products before incorporation into a separate entity and before such products lost their identity as such." Utah Concrete Prods. Corp. v. State Tax Comm'n, 101 Utah 513, 125 P.2d 408, 411 (1942). According to the Commission, our case law focuses not on the identity of the purchaser, but on the identity of the consumer or user of the tangible personal property. Supporting its argument, the Commission cites another case in which this court stated, "The crux of the issue... is whether the contractor is considered the ultimate consumer when the items purchased will be converted from personal property into real property." Tummurru Trades, Inc. v. State Tax Comm'n, 802 P.2d 715, 718 (Utah 1990).
This reasoning, however, is deficient. Contrary to the Commission's proposition, both of the above-quoted cases relied first on identifying the purchaser/owner and then on determining whether that purchaser also consumed the materials. In other words, those cases employ a two-step analysis. In the quoted authorities, the first step of the process was already complete, i.e., the contractors were admittedly the owners and purchasers, and all that remained was identification of the ultimate consumer. In the instant case, however, it is the tax-exempt entity that directly purchased and owned the materials subsequently converted by the contractor to real property improvements, a situation not contemplated by the cases upon which the Commission relies. For instance, in Utah Concrete Products, this court held that sales of a manufacturer's concrete products to contractors were subject to sales tax even though the contractors used those materials in public highway construction. 125 P.2d at 411. In Tummurru, the issue concerned whether a contractor was liable for sales tax on items he purchased for resale and subsequently shipped out of *329 state for use in construction. 802 P.2d at 718. This court stated that sales tax is due on any "resale" property actually consumed by the purchaser. Id. at 719. Olson Construction Co. v. State Tax Commission, 361 P.2d 1112 (Utah 1961), involved a subcontractor's claim that materials sold to prime contractors of the United States government should be tax free. We held that they were not. Id. at 1112-13.
No authority has been cited that persuades us that a contractor such as Thorup is liable for sales taxes on property that it in no way purchased or owned. To the contrary, the cases upon which the Commission relies comport with its own guidelines because they only reach the question of whether the contractor is the ultimate consumer if the contractor is also the purchaser and owner of tangible personal property converted to real property.
Because rule 865-19-58S establishes guidelines for circumstances arising when the contractor purchases and owns the materials, we conclude that a contractor who has not purchased the materials cannot be the ultimate consumer. Holding otherwise would allow the Commission to impose sales tax on any party who physically converts personal property purchased by another into real property. For instance, if Judge Memorial wanted to retain a contractor's services to build capital improvements entirely from donated materials, it would be unreasonable under the existing guidelines to tax the contractor merely because it handled the materials.
We hold that Thorup is not subject to sales tax because, as a matter of law, Judge Memorial was the last owner and the final consumer of the tangible personal property used in the construction of the school's capital improvements. We reverse the Commission's assessment to Thorup of additional sales tax in the amount of $26,328.30.
HALL, C.J., and ZIMMERMAN, J., concur.
HOWE, Associate Chief Justice, dissenting:
Thorup and Judge Memorial entered into a written contract whereby Thorup would furnish all necessary materials and labor and construct an auditorium, a music room, and locker rooms for $1,973,400 in accordance with the plans and specifications. Subsequent change orders increased the contract price to $2,205,321.83. Judge Memorial was given the option in the contract to purchase major items of equipment or materials "to gain credit for sales tax." Thorup agreed to "consider the use of any donated equipment or services if they meet the requirements of the contract documents." Accordingly, Judge Memorial purchased $422,226 worth of materials which Thorup accepted. Thorup then gave Judge Memorial a credit on the contract for $447,580. Thorup converted these materials into real property as it used and consumed them in fulfilling its contract.
In footnote 1 in the majority opinion, it is stated, "By exercising its right to donate materials for the real property improvements, Judge Memorial effectively formed an install-only contract with Thorup regarding those materials." The majority then concludes that because Thorup did not "own" the materials, it incurred no liability for sales or use tax.
I do not agree with that analysis. When the materials were purchased by Judge Memorial, it was expressly stated on the purchase order that the invoices were not to be sent to Judge Memorial but were to be sent to Thorup "for approval." Thorup had agreed to "consider the use" of the materials "if they [met] the requirements of the contract documents." This procedure was agreed upon because Thorup was the ultimate consumer of the materials and it wanted to ensure that the materials met the specifications of the contract under which Thorup was required to erect a finished building in accordance with plans and specifications. If Thorup was a mere "installer" of these materials, as the majority insists, Thorup would have no concern whether they met the "requirements of the contract documents." Thorup then incorporated *330 the materials into the construction in fulfillment of its contract after it had acquired the materials from Judge Memorial for a consideration, i.e., credit on the contract price. The materials were not "donated" as stated by the majority. Thorup acquired them for a consideration equivalent to a cash payment on the contract for $447,580.
The majority concludes that because Thorup did not "own" the materials, it is not liable for any tax. A solid argument can be made that Thorup purchased the materials from Judge Memorial by giving Judge Memorial a credit on the contract price, the same as it would have done had Judge Memorial made a cash payment on the contract. However, tax liability is predicated on use and consumption, not on ownership. Under Utah Code Ann. § 59-12-103(1) (1992), a tax is levied on "tangible personal property stored, used or consumed in this state." Thorup clearly used and consumed the materials in the performance of its contract. See Tri-State Generation, Inc. v. Department of Revenue, 636 P.2d 1335 (Colo.Ct.App.1981).
The majority artificially singles out these materials from the rest of the materials Thorup purchased directly from suppliers and concludes that as to the materials purchased by Judge Memorial, Thorup somehow was nothing more than a mere "installer" of Judge Memorial's materials. Not so. The written contract makes no such distinction between Thorup's responsibilities with respect to materials acquired from Judge Memorial and materials purchased by Thorup directly from suppliers. The majority argues that "had the materials been lost in a fire or had the project ended before completion, then Judge Memorial presumably would have been required to absorb the related costs." There is no basis for this gratuitous assumption. It would seem that once Thorup gave Judge Memorial credit for the materials on the contract price, the credit would not be reversed if the materials were destroyed or the project was not completed. But even if the majority's assumption is true, it does not detract from the fact that Thorup did in fact use and consume the materials and converted them into the real property of Judge Memorial. A taxable event then occurred. § 59-12-103(1).
In conclusion, I agree that an exempt entity like Judge Memorial could purchase materials such as fence posts and then hire someone to install them in the ground. In that case, there would not be a taxable event. But that is not what happened here, where Thorup had a contractual obligation to furnish the materials and the labor and to construct and deliver a completed building in compliance with the plans and specifications. It matters not whether Thorup obtained the materials from a supplier who was paid cash or from Judge Memorial who received a credit on the contract price.
For these reasons, I dissent from the reversal of the Commission's order. Where the legislature has granted an agency discretion in interpreting and administering statutes, such as our sale and use tax act, we review an agency decision only for an abuse of discretion. Morton Int'l, Inc. v. Auditing Div., 814 P.2d 581 (Utah 1991). No abuse is present here.
STEWART, J., concurs in the dissenting opinion of HOWE, Associate C.J.
NOTES
[1] Judge Memorial reserved its right to furnish materials in addendum one of its contract with Thorup, which provides in part:

General  Cost savings: The Contractor shall assist and coordinate as necessary with the Owner [Judge Memorial] and Architect in the implementation of any cost-saving procedures that may be available. For example, the Owner as a tax-exempt organization, may wish to purchase major items of equipment or materials to gain credit for sales tax. The Contractor [Thorup] shall consider the use of any donated equipment or services if they meet the requirements of the contract documents.
By exercising its right to donate materials for the real property improvements, Judge Memorial effectively formed an install-only contract with Thorup regarding those materials.
[2] The insurance policy included an endorsement that provided in part:

We will also cover materials, equipment, supplies and temporary structures, on your "premises" or in the open (including property inside vehicles) within 100 feet (30.5 meters) of your "premises" used for making additions, alterations or repairs to your "real property" at "covered locations."
[3] Utah Admin.R. XXX-XX-XXS. This rule was apparently created to provide guidelines for imposition of sales and use taxes. The rule provides that sales of tangible personal property to real property contractors are generally subject to tax. "The person who converts the personal property into real property is the consumer of the personal property since he is the last one to own it as personal property." Utah Admin.R. XXX-XX-XXS(A)(1) (1993).
[4] Utah Constitution, article XIII, section 2 provides:

(1) All tangible property in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed at a uniform and equal rate in proportion to its value, to be ascertained as provided by law.
(2) The following are property tax exemptions:
. . . .;
(c) property owned by a nonprofit entity which is used exclusively for religious, charitable or educational purposes....
Utah Const. art. XIII, § 2.
[5] The applicable statute provides in part:

(1) There is levied a tax on the purchaser for the amount paid or charged for the following:
(a) retail sales of tangible personal property made within the state;
....;
(1) ... tangible personal property stored, used, or consumed in this state.
Utah Code Ann. § 59-12-103 (1992). The focus of this statute is on the purchaser rather than the item purchased.
[6] UAPA also grants relief when a court finds that an agency action is "an abuse of the discretion delegated to the agency by statute." Utah Code Ann. § 63-46b-16(4)(h)(i) (1989). We recognize that both challenges may overlap to some extent because, arguably, an agency acting contrary to its own rules may have abused its delegated discretion. Under either challenge, the court will apply the same intermediate-deference, reasonableness and rationality standard of review. See SEMECO Indus. v. State Tax Comm'n, 849 P.2d 1167, 1173-74 (Utah 1993) (Durham, J., dissenting).
[7] In relevant part, the rule provides:

A. Sale of tangible personal property to real property contractors and repairmen of real property is generally subject to tax.
1. The person who converts the personal property into real property is the consumer of the personal property since he is the last one to own it as personal property.
2. The contractor or repairman is the consumer of tangible personal property used to improve, alter or repair real property; regardless of the type of contract entered into  whether it is a lump sum, time and material, or a cost-plus contract.
....
4. Sales of materials to religious or charitable institutions and government agencies are exempt only if sold as tangible personal property and the seller does not install the material as an improvement to realty or use it to repair real property.
Utah Admin.R. XXX-XX-XXS (1993).
[8] In Chicago Bridge & Iron Co. v. State Tax Commission, 839 P.2d 303, 306 (Utah 1992), this court emphasized the identity of the purchaser when it stated that the person "who purchases building materials ... is a `real property contractor,'... and the contractor's purchases ... are taxable transactions under sales tax law. In effect, a real property contractor is treated as a consumer for sales tax purposes." (Citations omitted.)

Contrary to the dissent's assertion, the act of crediting Judge Memorial for the materials it purchased and contributed to the project an act expressly contemplated by the contract  does not constitute a sale to Thorup. Because Judge Memorial merely exercised its contractual right to furnish materials for its own project, there was no exchange for consideration and therefore no taxable event.
[9] Judge Memorial's purchase of insurance to cover the materials in question substantiates this view of the allocation of risk.
[10] We note that the court of appeals reached the correct result in the similar case of Brown Plumbing & Heating v. State Tax Commission, 848 P.2d 181, 183-84 (Utah Ct.App.1993), where it determined that because Alpine School District, a tax-exempt entity, purchased the construction materials directly, it was not subject to sales tax. Also, the court of appeals properly rejected the Commission's argument that Alpine was Brown's purchasing agent, which would have subjected Brown to sales tax. No agency relationship existed because Brown had no control over materials purchased by Alpine, and Alpine, not Brown, had sole discretion over what if any purchases it would make. Id.