**VERMAX OF FLORIDA, INC., Petitioner,**

v.

**UTAH STATE TAX COMMISSION, AUDITING DIVISION, Respondent.**

**No. 950125–CA.**

Court of Appeals of Utah.

Nov. 9, 1995.

Mark O. Morris (argued), and Amy Weissman, Snell & Wilmer, Salt Lake City, for Petitioner.

Gale K. Francis, Assistant Attorney General (argued), and Jan Graham, State Attorney General, Salt Lake City, for Respondent.

Before DAVIS, Associate P.J., and BENCH and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Vermax of Florida, Inc. (Vermax), petitions for review of the Utah State Tax Commission's (Tax Commission) ruling which upheld certain sales taxes assessed to Vermax by the Auditing Division of the Tax Commission. We affirm in part and reverse and remand in part.

## BACKGROUND

Vermax is a Florida corporation that has been in existence since 1987. Prior to that time, Vermax Corporation, a Utah corporation, conducted a similar business.[1]

Vermax designs, manufactures, and sells bathroom products to hotels, motels, and other commercial and residential projects. Vermax purchases raw materials from Utah vendors and then uses those materials in manufacturing its bathroom products. This process is conducted entirely in the State of Utah. Vermax sells and transports its prod-

ucts to purchasers outside Utah and generally subcontracts with out-of-state companies to install its products.

The Auditing Division of the Tax Commission sent Vermax a Notice of Deficiency dated November 25, 1991, requiring payment of sales taxes on Vermax's Utah purchases of raw materials from 1988 through 1990. The amount of the claimed deficiency totalled $86,260.24, which included underpaid taxes, interest, and penalties. Vermax petitioned the Tax Commission for a redetermination of the taxes. However, on September 1, 1994, the Tax Commission affirmed the Auditing Division's assessment. Vermax subsequently filed its Petition for Review with this court.

## ISSUES FOR REVIEW

Vermax presents numerous issues for review; however, our analysis distills these to the following two issues: (1) Did the Tax Commission err in taxing Vermax's purchases of raw materials from Utah vendors? (2) Did the Tax Commission err by not abating the ten percent negligence penalty assessed by the Auditing Division?

## STANDARDS OF REVIEW

This court defers to the Tax Commission's findings of fact, applying a substantial evidence standard. *Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 67 (Utah App.1989). However, we grant no deference to the Tax Commission's conclusions of law, reviewing them for correctness—absent an explicit statutory grant of discretion. Utah Code Ann. § 59–1–610 (Supp.1994); *Newspaper Agency Corp. v. State Tax Comm'n,* 892 P.2d 17, 20 (Utah App.1995).

We will reverse the Tax Commission's finding of negligence or disregard of the rules supporting a penalty assessment only if the challenging party establishes "that they are contrary to law or otherwise erroneous." *Tummurru Trades, Inc. v. State Tax Comm'n,* 802 P.2d 715, 720 (Utah 1990).

---

1. Apparently, Vermax of Florida purchased some    or all of the assets of Vermax Corporation.

## ANALYSIS

### Ultimate Consumer

Although Vermax presents numerous issues for review, as conceded by Vermax at oral argument, the propriety of the tax assessment essentially turns on one issue: Whether Vermax was the ultimate consumer of the raw materials it purchased and used in manufacturing its products.

The Tax Commission stated that it approved the assessment of sales tax on Vermax's purchase of raw materials because those materials became real property upon installation, and, argues the Tax Commission, Vermax was the last entity to use the raw materials as personal property before they were converted into real property.

Rule 865–19–58S of the Utah Administrative Code states:

> Sale of tangible personal property to real property contractors ... is generally subject to tax.

Further:

> [S]ales of materials and supplies to contractors and subcontractors are taxable transactions as sales to final consumers.

Utah Admin.Code R865–19–58S (1990).[2] A final consumer is one who "converts the personal property into real property ... since he is the last one to own it as personal property." *Id.* The contractor is taxed as the ultimate consumer because real property sales are not taxable and thus the sale of raw materials would escape taxation upon being converted into real property if the ultimate consumer were not taxed. *See Niederhauser Ornamental & Metal Works Co. v. State Tax Comm'n,* 858 P.2d 1034, 1038 (Utah App. 1993), *cert. den.* 870 P.2d 957 (holding contractor ultimate consumer because real property sale not taxed, thus contractor taxed to avoid "stream of products incorporated into real property [from escaping] sales tax altogether").

Consequently, in *Tummurru Trades, Inc. v. State Tax Commission,* 802 P.2d 715 (Utah 1990), the Utah Supreme Court held that sales tax is levied upon the ultimate consumer of personal property, and that the contractor is the ultimate consumer and thus liable for sales tax since "[t]he act of taking the items out of inventory for use in a construction contract is a retail sale...." *Id.* at 718–19; *see also Chicago Bridge & Iron Co. v. State Tax Comm'n,* 839 P.2d 303, 307–08 (Utah 1992) (holding manufacturer and installer of mixing tanks ultimate consumer and subject to tax).

However, in *Thorup Bros. Construction v. Auditing Division,* 860 P.2d 324, 327–28 (Utah 1993), the Utah Supreme Court held that, under the facts of that case, the contractor was not the ultimate consumer of the personal property because the owner of the project, not the contractor, purchased and also actually and constructively owned the personal property before it was converted into real property. The *Thorup* court made clear that one who does not own the property cannot become its ultimate consumer even if that entity converts the property into real property. *Id.; see also Arco Elec. v. State Tax Comm'n,* 860 P.2d 330, 331 (Utah 1993) (holding contractor not responsible for use tax where tax exempt entity purchased the materials used).

In the present case, Vermax asserts that because it did not own the materials at the time of installation, it was not the ultimate consumer of the materials, and thus was exempt from sales tax. In support of its assertions, Vermax notes that it entered into separate contracts for the sale of its products and for the installation of those products. Further, Vermax states that it separately invoiced sale and installation charges.

■ However, the deciding issue in this case is whether Vermax owned the products at the time of installation, not how the purchase and installation contracts were entered into and invoiced. Since Vermax was the party claiming a tax exemption, it had the burden to provide evidence that it did not own the materials at the time of installation. *Parson Asphalt Prods., Inc. v. State Tax Comm'n,* 617 P.2d 397, 398 (Utah 1980)

---

**2.** Although the assessments covered a period from 1988 through 1990, the relevant provisions of the Utah Administrative Code remained unchanged. The 1989 and 1990 citations are also identical, but the 1988 citation is slightly different, cited as R865–58S Utah Administrative Code (1988).

(holding one who claims tax exemption has burden of showing entitlement to exemption). However, the only evidence Vermax presented on this issue was a small number of the contracts it entered into with various project owners. None of these contracts establish whether title to the products had passed at the time they were installed.[3] Furthermore, Vermax and the Tax Commission stipulated to the following paraphrased facts:

1. For the transactions at issue, Vermax issued separate bids to its out of state customers—first, for the sales of its products, and the second, for installation of those products.

2. Vermax subcontracted with local workers for the installation work.

3. Vermax generally invoiced separately for the purchase and installation.

Vermax had the opportunity at the hearing before the Tax Commission to provide further evidence regarding when it ceased to own or control the products, but failed to do so. We therefore defer to the Tax Commission's finding that Vermax furnished and installed its products for out-of-state customers, because that finding is supported by substantial evidence. Because Vermax incorporated the products which utilized the raw materials into real property, it was liable for sales tax on those materials. Thus, we must affirm the Tax Commission's order assessing the taxes.

### Penalties

Vermax argues that the Tax Commission erred in assessing the ten percent penalty against it. We agree.

The Tax Commission may assess a penalty for failure to pay taxes if the failure is due to "negligence" or an "intentional disregard of authorized rules with knowledge thereof." Utah Code Ann. § 59–12–110(5) (1992) (amended 1993). The penalty allowed is ten percent of the underpayment. Utah Code Ann. § 59–1–401(3)(a) (1992) (amended 1994).

 As a foundation for the Tax Commission's conclusion that the ten percent penalty

was appropriate, the Tax Commission found that in 1986 "Vermax was also assessed for additional sales tax for failure to collect tax on 'furnish and install' contracts." However, there is no evidence in the record that Vermax had any knowledge of the previous assessment or the basis thereof. An employee of Vermax testified that he worked for Vermax Corporation, the Utah corporation, prior to working for Vermax. However, he did not testify he had any knowledge of the Tax Commission proceedings involving Vermax Corporation, nor that anyone else at Vermax had such knowledge. The Tax Commission's finding suggests that it viewed Vermax and the Utah corporation as one and the same, but there was no evidence to support that view. Because there is no evidence to support the Tax Commission's finding, its assessment of the penalty must fail.[4] Therefore, we conclude that the Tax Commission erred in affirming the Auditing Division's assessment of the ten percent penalty.

### CONCLUSION

Vermax failed to present evidence supporting its assertion that it did not own the materials purchased in Utah at the time they were ultimately converted into real property. Thus, Vermax must be considered the ultimate consumer thereof, and was properly assessed sales tax on the purchase of the raw materials. We affirm the Tax Commission's order affirming that assessment. However, there is no evidence in the record that Vermax's failure to pay the taxes was due to negligence or an intentional disregard of rules. Therefore, we reverse that portion of the Tax Commission's ruling and remand the case to the Tax Commission for entry of an order consistent with this opinion.

DAVIS, Associate P.J., and BENCH, J., concur.

---

3. In fact, one of the specimen contracts states that title would not pass until Vermax received payment, and Vermax did not contend before the Tax Commission that its customers owned the products prior to installation by Vermax agents.

4. Vermax also argues that the penalty was inappropriate because it "based its nonpayment of taxes on a legitimate, good faith interpretation of an arguable point of law." *Hales Sand & Gravel v. Audit Div.*, 842 P.2d 887, 895 (Utah 1992).