Juanita J. FUSSELL, Petitioner,

v.

DEPARTMENT OF COMMERCE, DIVISION OF OCCUPATIONAL & PROFESSIONAL LICENSING, Respondent.

No. 900291–CA.

Court of Appeals of Utah.

July 18, 1991.

Jeffrey L. Silvestrini (argued), Cohne, Rappaport & Segal, Salt Lake City, for petitioner.

R. Paul Van Dam, State Atty. Gen., Melissa M. Hubbell, Asst. Atty. Gen. (argued), Salt Lake City, for respondent.

Before GARFF, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Petitioner Juanita J. Fussell appeals the order of the Division of Occupational and Professional Licensing, Utah Department of Commerce (the Division), denying her application for licensure as a psychologist. Because the rule upon which the denial was based improperly exceeds the relevant statutory requirements, we reverse, and remand to the Division for determination of whether Dr. Fussell meets the statutory requirements, and is therefore eligible to take the psychologist licensing examination.

## BACKGROUND

Dr. Fussell received a Doctor of Education (Ed.D.) degree from Vanderbilt University, Nashville, Tennessee, in 1985.[1] Her doctorate is in the field of human development counseling, rather than psychology. Upon attaining her degree, however, Dr. Fussell obtained employment as a counseling psychologist at Weber State College in Ogden, Utah.[2]

In August 1987, Dr. Fussell applied to the Division for psychologist licensure.

---

1. Dr. Fussell's degree was earned through the George Peabody College for Teachers, which merged with Vanderbilt in 1979. For convenience, we refer to Dr. Fussell's educational institution simply as Vanderbilt.

2. Dr. Fussell's psychological counseling practice at Weber State is permitted under an exception to the licensing requirement for individuals employed by educational institutions. *See* Utah Code Ann. § 58–25–6 (1986); superseded by Utah Code Ann. § 58–25a–6 (1990) (effective July 1, 1989).

Her application was denied, because her doctorate had not been obtained through a course of study that was clearly labeled as a psychology program.

■ The labeling requirement that formed the basis for the rejection of Dr. Fussell's application was promulgated by the Division under the former Utah code provisions governing psychologist licensure, Utah Code Ann. §§ 58–25–1 through –12 (1986). The provision under which the labeling requirement was promulgated provided:

(1) Each applicant for a license to practice as a psychologist shall:

.    .    .    .    .

(b) produce transcripts of credit ... which demonstrate that the candidate for licensing has received a doctoral degree based on a *program of studies whose content was primarily psychological* from an accredited educational institution recognized by the division.

Utah Code Ann. § 58–25–2 (1986) (emphasis added).[3]

The labeling requirement appears in Rule 4, Utah Admin. Code R153–25–8 (1987), which defines the statutory term, "program of studies whose content was primarily psychological," to mean, among other things, that "[t]he program wherever it may be administratively housed, must be *clearly identified and labeled* as a psychology program. Such a program must

specify in pertinent institutional catalogues and brochures its *intent to educate and train professional psychologists.*" Rule 4(b), Utah Admin.Code R153–25–8 (1987) (emphasis added).

Dr. Fussell challenged the denial of her license application, arguing that her program of studies had been primarily psychological in content, and therefore met the statutory requirement. At Dr. Fussell's request, the Division held a formal hearing before an administrative law judge (ALJ) and a special appeals board, in April 1990.[4]

At the hearing, three Division psychologists testified that they had reviewed Dr. Fussell's license application.[5] All three testified that, based upon review of the Vanderbilt catalog descriptions of its human development counseling program, that program was neither labeled as psychology nor generally intended to train psychologists.[6] Thus the Division psychologists agreed that Fussell's license application should be denied.

Dr. Fussell, however, testified that although her field of study was labeled "human development counseling," her actual program, designed with assistance from her academic advisors, had been primarily psychological in content. In so designing her program, it had been Dr. Fussell's intent to practice as a counseling psychologist.[7] Dr. Fussell also testified that her dissertation had been prepared in the style

**3.** Effective July 1, 1989, section 58–25–2 was replaced with a stricter statutory education requirement for psychologist license applicants. The new statute requires "satisfactory completion of a doctoral degree *in psychology.*" Utah Code Ann. § 58–25a–3(1)(c) (1990) (emphasis added). Because the new statute became effective after Dr. Fussell applied for licensure, this dispute is governed by the former statute. *See* Utah Code Ann. § 68–3–3 (1986) (new statutes are not retroactive unless expressly so declared); § 68–3–5 (1986) (repeal of statute does not affect rights accrued under the statute).

**4.** The hearing was conducted pursuant to Utah Code Ann. § 58–1–17 (1990), which allows unsuccessful applicants for all types of professional licensing regulated by the statute, to request a special appeals board hearing.

**5.** By "*Division psychologists,*" we mean psychologists who were members of the Division's psy-

chology licensing board when Dr. Fussell's application was reviewed.

**6.** The 1985 Vanderbilt catalog disavowed such intention, advising that enrollment in the human development counseling program was not recommended for students wishing to obtain psychology licensure; instead, such students were advised to "apply to programs approved by the American Psychological Association [APA]." This advice, apparently designed to help students avoid problems like that faced by Dr. Fussell, cannot be regarded as providing notice of Utah's law, which, at least at the time this dispute arose, was not tied to APA approval by statute or rule.

**7.** Fussell testified that she had found the Vanderbilt psychology programs to be more oriented toward research, and therefore less useful to her chosen career in counseling.

approved by the American Psychological Association (APA). She had also taken a psychology practicum at Vanderbilt and had completed a one year psychology internship at the University of Utah, both of which programs were APA approved. As evidence of the psychological orientation of her individual program, Fussell also submitted syllabi of many of her Vanderbilt classes.

Other witnesses testified on Dr. Fussell's behalf. A professor on the University of Utah psychology internship committee stated that Dr. Fussell had been admitted into the internship upon the committee's assessment that her studies had been primarily in psychology. The professor opined that Dr. Fussell's courses and dissertation, if completed at the University of Utah, would have earned a doctorate in counseling psychology from that university. Dr. Fussell's supervisor at Weber State College also testified, stating that he had "no qualms" about Dr. Fussell's academic background.

Of the three Division psychologists, only one had reviewed Dr. Fussell's Vanderbilt transcript. That witness opined that Dr. Fussell had "probably" taken more psychology courses than she needed to become a licensed psychologist. Another Division psychologist, upon scanning Dr. Fussell's application, testified that she had apparently met all the core course requirements for licensure, as listed in Rule 4(i), Utah Admin.Code R153–25–8 (1987).

Based on the testimony and exhibits, the ALJ found, as indicated in his findings of fact, that fifty-eight percent of Dr. Fussell's Vanderbilt courses had been taught in the psychology department, and that altogether, eighty to ninety percent of her courses had been at least cross-listed in the psychology department. The ALJ also found that Dr. Fussell had, as she had testified, completed a one year psychology internship at the University of Utah, completed a dissertation under the supervision of psychologists, and was employed as a counseling psychologist at Weber State College. The ALJ also found that the catalog description of Vanderbilt's human development counseling program did not label that program as one in psychology, and did not indicate an intent to train professional psychologists.

The ALJ then examined the statutory educational requirement for psychologist licensure and the Rule 4(b) definition of the requirement. He concluded, as a matter of law, that Rule 4(b)'s psychology labeling requirement appropriately defined the statutory requirement of "a program of studies whose content was primarily psychological." Utah Code Ann. § 58–25–2(1)(b). Therefore, because the human development counseling program, as described in the Vanderbilt catalog, did not satisfy the labeling requirement, the ALJ concluded that Dr. Fussell had not completed a program of studies whose content was primarily psychological. Based upon that conclusion, the Division again denied Dr. Fussell's license application.

On appeal, Dr. Fussell argues that: (1) Rule 4(b) is out of harmony with Utah Code Ann. § 58–25–2(1)(b), and therefore cannot be used to deny her license application; and (2) absent Rule 4(b), the ALJ erred in determining that she had not completed a program of studies whose content was primarily psychological.

## RULE 4(b)

We turn first to Dr. Fussell's argument that Rule 4(b), Utah Admin. Code R153–25–8, is out of harmony with its controlling statute. An administrative agency's interpretation of a statute is a question of law, reviewed on appeal on a nondeferential, correction-of-error basis. *Morton International, Inc. v. Utah State Tax Comm'n*, 814 P.2d 581 (Utah 1991); *Ambus v. Utah State Bd. of Educ.*, 800 P.2d 811, 812 (Utah 1990); *Hurley v. Board of Review of Industrial Comm'n*, 767 P.2d 524, 527 (Utah 1988); *Fred Meyer v. Indus. Comm'n of Utah*, 800 P.2d 825, 827 (Utah App.1990). Here, the ALJ's conclusion that Rule 4(b) appropriately defined the psychologist education requirement of Utah Code Ann. § 58–25–2(1)(b) was a conclusion of law. We agree with Dr. Fussell that the ALJ's conclusion was incorrect.

■ Agency decisions must be in harmony with legislation governing the agency. *Merrill Bean Chevrolet, Inc. v. State Tax Comm'n,* 549 P.2d 443, 445 (Utah 1976). In addition, administrative rules and interpretations of those rules, must be consistent with the governing statutes. *West Jordan v. Dep't of Employment Security,* 656 P.2d 411, 412 (Utah 1982); *Robert H. Hinckley, Inc. v. State Tax Comm'n,* 17 Utah 2d 70, 404 P.2d 662, 668 (Utah 1965). Rule 4(b) is not consistent with its governing statute, Utah Code Ann. § 58–25–2(1)(b), because the rule imposes additional requirements for psychologist licensure that are not contained within the plain meaning of the statutory language.

In examining the statute, we assume that its language "was used advisedly by the Legislature," and should be "interpreted and applied according to its usually accepted meaning." *West Jordan v. Morrison,* 656 P.2d 445, 446 (Utah 1982). The language of section 58–25–2(1)(b), which required only that a candidate for psychologist licensure hold a doctorate "based on a program of studies whose content was primarily psychological," clearly contemplated that graduates of programs not labeled as psychology might also qualify for licensure.[8]

Had the legislature intended to require graduation from programs labeled as psychology programs, it could have easily done so, as it did with respect to the licensing of many other professions under statutes existing when section 58–25–2 was in effect. *See, e.g.,* Utah Code Ann. § 58–5–2(2) (1986) (podiatrists: graduation from podiatry school required); § 58–12–31(5) (physicians and surgeons: doctor of medicine degree from medical college); § 58–17–7(2)(c) (pharmacists: professional entry degree from approved college of pharmacy); § 58–28–4(3) (veterinarians: graduation from veterinary college); § 58–31–9(1)(c) (reg-

istered nurses: completion of state approved nursing education program); § 58–35–5(1)(a) (certified social workers: masters degree in social work). Rule 4(b), by engrafting the psychology labeling requirement upon the statutory education requirement for licensed psychologists, goes beyond the intent of the legislature as reflected in the language of section 58–25–2(1)(b). *See Lorenc v. Call,* 789 P.2d 46, 49 (Utah App.1990) (administrative rules may not abridge, enlarge, extend or modify statutes); *McPhail v. Montana Bd. of Psychologists,* 196 Mont. 514, 640 P.2d 906, 908 (1982) (administrative rules must not add requirements not envisioned under controlling statutes).

The Division argues that the stricter educational requirement placed upon psychologist license applicants by Rule 4(b) is necessary, as a matter of policy, to protect the public from inadequately prepared practitioners. Subsequent to the onset of this dispute, our legislature has adopted this policy through the enactment of the new Psychologists' Licensing Act, Utah Code Ann. §§ 58–25a–1 through 14 (effective July 1, 1989). Under the new act, applicants for psychologist licenses must have a doctoral degree specifically in psychology, Utah Code Ann. § 58–25a–3(1)(c) (1990), rather than simply one obtained through studies primarily in psychology.

However, whatever policy drawbacks may have existed under the former statute, it was up to the legislature to provide a remedy. In adopting Rule 4(b), the Division improperly encroached upon the legislature's sole province. Rather than administering the former statutory educational requirement for psychologists through clarifying regulations, the Division effectively amended it, by creating stricter educational requirements than the statute contemplated. This was a usurpation of legislative function, and as such, Rule 4(b), as applied to former Utah Code Ann. § 58–25–

---

**8.** We have traced Utah Code Ann. § 58–25–2 back to its apparent first enactment in 1959. Although the section was to be effective May 12, 1959, two requirements—a study program "primarily in psychology," and passage of an examination—did not become effective until July 1, 1960. Laws of Utah 1959, ch. 100, § 2. Thus, even the somewhat loose educational requirement originally required of psychologists seems to have been subject to some "grandfathering."

2(1)(b), is invalid.[9] Therefore, it was improper for the ALJ to rely upon Rule 4(b) as a basis for concluding that Dr. Fussell had not completed a program of studies whose content was primarily psychological.

## PRIMARILY PSYCHOLOGICAL

■ The record reveals that the denial of Dr. Fussell's license application was based entirely upon the failure of her program of studies to meet the labeling requirement of Rule 4(b), Utah Admin.Code R153–25–8.[10] Because we have held that Rule 4(b) is invalid as applied to former Utah Code Ann. § 58–25–2(1)(b), it remains to be determined whether Dr. Fussell has satisfied the education requirement of that statute, i.e., whether her program of studies was primarily psychological in content.[11]

Dr. Fussell argues that the evidence she presented to the Division establishes that she is qualified to sit for the examination required for psychologist licensure under section 58–25–2(1)(d). The Division urges that Dr. Fussell has been shown to be unqualified for licensure regardless of Rule 4(b), and that the denial of her application should be affirmed.[12] Neither view is persuasive.

Based upon the ALJ's finding that Dr. Fussell's doctoral program emphasized psychology, we are urged to hold that she has satisfied the educational requirement of former Utah Code Ann. § 58–25–2(1)(d). However, because the Division's analysis stopped, both initially and at the special appeals board level, upon determining that Dr. Fussell did not satisfy the Rule 4(b) labeling requirement, there has been no weighing of all the evidence regarding her qualifications. This duty rests initially with the Division. *See Grace Drilling Co. v. Board of Review of Indus. Comm'n,* 776 P.2d 63, 68 (Utah App.1989). Therefore, we remand this case to the Division for a determination of whether Dr. Fussell has completed a program of studies that was primarily psychological in content, and whether she has met the other requirements for the licensure examination that are required by section 58–25–2. On remand, because Rule 4(b) cannot be applied, it may be necessary for the Division to undertake a course-by-course analysis of Dr. Fussell's academic program in order to determine whether it was primarily psychological in content.

## CONCLUSION

Because Rule 4(b), Utah Admin.Code R153–28–8, improperly restricts the psychologist education requirement of the applicable statute, it cannot be used to deny Dr. Fussell's psychologist license applica-

**9.** In *Athay v. State Dep't of Business Regulation,* 626 P.2d 965 (Utah 1981), the denial of a psychologist license application under former section 58–25–2 was successfully attacked because no published guidelines existed to define "a program of studies whose content was primarily psychological." A district court, reviewing the denial, held that enforcement of this broad language without published standards was "an arbitrary administrative usurpation of the legislative function." *Id.* at 966. In subsequently promulgating Rule 4(b), the Division, in solving the problem of inadequate published standards, has created a stricter educational standard than contemplated by former section 58–25–2, and has again, albeit in a different fashion, usurped legislative power.

**10.** The ALJ's findings of fact and conclusions of law reveal that his determination that Dr. Fussell had not completed a program of studies that was primarily psychological in content was based solely upon Rule 4(b). Additionally, at the close of the special appeals board hearing, the ALJ sought and received clarification from Division counsel that compliance with Rule 4(b) was the only issue before the board. Other portions of Rule 4, although discussed during the hearing, specifically were not at issue.

**11.** The Division never made any findings regarding the other requirements for psychologist licensure under the former statutes, e.g., Utah Code Ann. § 58–25–2(1)(a) (1986) (moral character); § 58–25–2(1)(c) (1986) (work experience). While Dr. Fussell submitted considerable evidence on these requirements, the initial determination of whether she had satisfied them rests with the Division.

**12.** This argument on appeal is not well-taken. It contradicts the Division's position at the special appeals board hearing, where Division counsel asserted, "There has not been an actual evaluation [of Dr. Fussell's qualifications]. They [the psychology licensing board] stopped at the first step, which is rule 4(b)."

tion, and the Division's decision is accordingly reversed. Because the Division did not weigh the evidence regarding Dr. Fussell's educational and other qualifications to sit for the licensing examination, it would be premature for this court to perform that task now. Therefore, this case is remanded to the Division for the purpose of examining the evidence to determine whether Dr. Fussell may sit for the license examination.

GARFF and JACKSON, JJ., concur.