**VALGARDSON HOUSING SYSTEMS, INC., Petitioner,**

v.

**STATE TAX COMMISSION, Respondent.**

**No. 920644–CA.**

Court of Appeals of Utah.

March 12, 1993.

Rehearing Denied April 6, 1993.

---

W. Andrew McCullough, Orem, for petitioner.

Jan Graham and Clark L. Snelson, Salt Lake City, for respondent.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Petitioner appeals a decision from a formal hearing of the Utah State Tax Commission assessing it for delinquent taxes on certain sales of modular housing units to dealers. The Tax Commission determined that when petitioner transferred these modular units prior to permanent attachment to real property, it sold tangible personal property subject to sales tax. We affirm.

## BACKGROUND

Petitioner, Valgardson Housing Systems, Inc., a Utah corporation with its principal place of business in Springville, Utah, manufactures modular housing and other modular buildings at its Springville assembly plant. Petitioner then transports these modular units by truck to a building site, hoists the units by crane from the trucks and prepares them for "skidding" onto a previously prepared foundation or pad. Petitioner sells units to both individual purchasers and to dealers who are general contractors selling the modular houses on a commission basis.

The auditing division of the Utah State Tax Commission assessed a sales tax deficiency against petitioner for its sales of modular housing units to dealers from January 1987 through March 1990. In the construction of the units involved in these transactions, petitioner purchased building materials through tax exempt transactions and subsequently paid sales tax only on 50% of the purchase price of the completed modules, representing materials cost. The remaining 50% of the price paid by dealers was regarded as attributable to labor costs, and thus exempt from sales tax. A written contract between petitioner and the dealers provided that petitioner transferred these modular units to dealers who would then sell completed homes to their purchasers through a separate contract to which petitioner was not a party. Under the contract

the dealers were responsible for building or supervising the building of the foundations; acquiring the appropriate building permits, licenses, and local trucking permits; carrying comprehensive public liability insurance; and warranting all the labor which they performed on and materials which they furnished for petitioner's units. The dealers also agreed to accept the risk of loss or damage for the modular units as they were removed from petitioner's trucks by crane. Title to the units vested in the dealers upon removal from the trucks and prior to attachment to the foundation or pad. Furthermore, dealers were responsible for "stitching" or permanently attaching the modular units to the pre-prepared foundation. The stitching process involved installing some siding, capping the roof, affixing the units to the foundation; connecting the utilities, plumbing and electricity; and performing minor interior work involving doorways, carpeting and some drywall.

The Tax Commission auditor declared that the modular units only became real property for purposes of Utah's Sales and Use Tax Act upon permanent attachment to the foundation. Therefore, transactions between petitioner and its dealers which were finalized as the units were lifted off the truck and before they became part of the real property constituted taxable events. These events resulted in petitioner's liability for $38,217.59 in unremitted taxes. This deficiency assessment reflected the auditor's determination that the completed modular units were fully subject to tax as the sale of tangible personal property, whereas petitioner had been paying taxes under its assumption that the units were sold as improvements to real estate. If the units were taxed as improvements to real estate, only the stipulated 50% of their total cost representing materials would be subject to tax and the 50% of the cost for labor would be exempt.[1]

Petitioner filed a petition for redetermination and the Tax Commission held a formal hearing on the matter on April 21, 1992. The Tax Commission upheld the findings of the auditor, including the determination that the transfers of unattached modular units from petitioner to dealers were personal property transactions. From that decision, petitioner filed a Petition for Writ of Review with this court.

## ANALYSIS

### Standard of Review

Because the administrative action commenced after the effective date of the Utah Administrative Procedures Act (1989) ("UAPA"), its provisions control our review of this case. Both parties recognize that *Morton Int'l, Inc. v. State Tax Comm'n*, 814 P.2d 581 (Utah 1991) interprets the critical language of UAPA's section 63–46b–16(4)(d) (1989) which sets forth the standard for review of administrative decisions. According to *Morton*, appellate review of agency decisions interpreting statutory law employs a correction of error standard unless the legislature has expressly or impliedly granted the agency discretion to interpret and administer the statute at issue. *Id.* at 588–89; *Nucor Corp. v. State Tax Comm'n*, 832 P.2d 1294, 1296 (Utah 1992); *Putvin v. State Tax Comm'n*, 837 P.2d 589, 590–91 (Utah App.1992). "If discretion exists, [appellate courts] review the agency's determination for reasonableness." *Putvin*, 837 P.2d at 590–91.

In this case, the Tax Commission applied Utah Code Annotated section 59–12–102(13) (1987) of the Sales and Use Tax Act defining "tangible personal property" for purposes of sales tax assessment under Utah Code Annotated section 59–12–103(1)(a) (1987). The Utah Supreme Court has stated that the statutory section imposing sales tax on tangible personal property "implicitly grant[ed] the Commission some discretion in determining whether a certain transaction constitutes a sale of 'tangible personal property.'" *BJ–Titan Servs. v.*

---

**1.** Consistent with this ruling, in instances in which petitioner and its dealer amended the contract by work order or invoice to state that title passed only after attaching the housing unit to the foundation, the auditor assessed no additional tax because the units had already become real property, exempt from further sales tax, at the moment of sale.

*State Tax Comm'n*, 842 P.2d 822, 828 (Utah 1992). The supreme court has further noted that "[w]hether the subject matter of a sales transaction is deemed real property or tangible personal property will depend on the facts of each case." *Chicago Bridge v. State Tax Comm'n*, 839 P.2d 303, 307 (Utah 1992).[2] This language dictates that we defer to the Tax Commission's decision on the tax status of the modular units at issue unless we find that decision unreasonable or arbitrary.[3] *Id.; BJ–Titan Servs.*, 842 P.2d at 828.

### Sales Tax Assessment

■ Because the assessment period at issue ran from January 1987 through March 1990, the sales tax law in effect during that time governs petitioner's appeal. *Chicago Bridge*, 839 P.2d at 306. Petitioner's arguments rely on one then-current provision of the tax statutes and one administrative regulation to protest the assessment of personal property sales tax. First, petitioner claims that the sales tax exemption in Utah Code Annotated section 59–12–102(13)(b)(i) (1987) regarding improvements to real estate, should apply to the sale of its modular home units even when purchased through contract by dealers. Second, petitioner asks the court to accept its interpretation of the Utah Administrative Code R865–58S–1 (1987–88) of the Utah State Tax Commission to afford it status as a real property contractor, liable for the materials and supplies but not the

labor invested in the production of its modular units because the units constituted "completed homes." Petitioner also argues that, for tax purposes, it should be treated no differently than general contractors who build on site, because there is no defensible difference between its business and that of a conventional builder.

In its Decision and Order, the Tax Commission rejected petitioner's last argument, finding a significant distinction between petitioner's operation in the sales in question and the work of a typical general contractor who builds on site: Unlike petitioner, "the typical general contractor is engaged in the construction of improvements to and upon real property." It further found that until the units at issue become permanently affixed, "the modular units remain mobile and thus do not have the *essential characteristic of being permanently affixed* which distinguishes improvements to real property from other types of tangible personal property" (emphasis added). These distinctions described by the Tax Commission are within the bounds of reasonableness.

In interpreting Utah Code Annotated section 59–12–102(13)(b)(i),[4] the Tax Commission determined that the nature of the property at the time of the sale distinguishes tangible personal property from an improvement to real estate. The Tax Commission, therefore, looked to the moment of sale as defined in the contracts between petitioner and its dealers, and declared that

**2.** The *Chicago Bridge* court deferred to the Tax Commission's decision on the taxpayer's status as a real property contractor because the ruling was "based in part on law and in part on fact. In ruling on such issues, the Commission must necessarily exercise a degree of discretion." *Id.*

**3.** Both *BJ–Titan Servs.*, interpreting Utah Code Annotated section 59–15–4(1) (Supp.1986), and *Chicago Bridge*, interpreting Utah Code Annotated section 59–15–4(a) (Supp.1984 & Supp.1985), discussed precursors to the sales tax provision renumbered in 1987 as Utah Code Annotated section 59–12–103. "Tangible personal property" as used in section 59–12–103 was not specifically defined until 1987. *See* Utah Code Ann. § 59–12–102(13) (1987).

**4.** Utah's Sales and Use Tax Act in effect at the critical time provided "[t]here is levied a tax on the purchaser for the amount paid or charged

for the following: (a) retail sales of tangible personal property made within the state." Utah Code Ann. § 59–12–103(1)(a) (1987). The Act also included the following definitions:

(a) "Tangible personal property" means:
(i) all goods, wares, merchandise, produce and commodities;
(ii) all tangible or corporeal things and substances which are dealt in or capable of being possessed or exchanged;

  .    .    .    .    .

(iv) all other physically existing articles or things, including property severed from real estate.
(b) "Tangible personal property" does not include:
(i) real estate or any interest therein or *improvements* thereon.
*Id.* at § 59–12–102(13) (1987) (emphasis added).

because the units lacked the essential characteristic of permanent attachment at that time, they had to be defined as tangible personal property.[5] According to the Tax Commission, the modular units, fabricated and assembled at petitioner's factory, did not become part of the real property until they were combined with other units by nailing and bolting, connecting plumbing and wiring, seaming and finishing walls, and were secured to the foundation. Under the terms of the contract that petitioner elected to use, its dealers completed these critical procedures after title passed.

■ Language in Utah tax cases supports the Tax Commission's "affixation" distinction between tangible personal property and improvement to real estate. Our supreme court has stated that Utah statutory law has defined "improvements" as "real estate and includes all buildings, structures, fixtures, fences and improvements *erected upon or affixed to land."* *Great Salt Lake Minerals & Chems. Corp. v. State Tax Comm'n,* 573 P.2d 337, 339 (Utah 1977) (citing Utah Code Ann. § 59–3–1(3) (1953)) (emphasis added). Furthermore, in a second sales tax case, the supreme court noted the fact sensitivity of distinguishing tangible personal property from real property and acknowledged the reasonableness of a ruling that certain items manufactured by a taxpayer were properly deemed real property *"once at-*

*tached." See Chicago Bridge,* 839 P.2d at 307 (emphasis added). Finally, in a third tax case, this court noted that converting materials into an improvement to real property requires the inseparable commingling of "labor, materials, *and real estate."* *Superior Soft Water v. State Tax Comm'n,* 843 P.2d 525, 529–30 (Utah App.1992)[6] (emphasis added). This precedent supports the reasonableness of the Tax Commission's decision that tangible personal property can only be characterized as an improvement to real estate once affixed to realty. Therefore, in the instances at issue where the sales transactions contractually preceded attachment, the Tax Commission's ruling that the transfers of modular housing units were taxable as sales of tangible personal property was reasonable.

■ Petitioner also criticized the Tax Commission for ignoring Utah Administrative Code R865–58S–1 (1987–88)[7] during its formal hearing and failing to analyze that administrative rule in its decision. The rule provides a sales tax exemption for the sale of real property or labor performed on real property, "for example the sale of a completed home." *Id.* at R865–58S–1(A)(3). Petitioner claims that its transfer of modular units to dealers constitutes the sale of "completed homes" which are not subject to tax under the rules. Petitioner bases this argument on its assertion that "[t]he

---

5. Petitioner characterizes the Tax Commission's decision as creating a hyper-technical distinction based on timing and the transfer of title. This inaccurately portrays the position of the Tax Commission which clearly states that "affixation" is the determinative factor in assessing whether a modular unit is an improvement to real estate.

6. Unlike the facts of this case, the petitioner in *Superior Soft Water* both sold and installed the water heaters. Therefore, the court's determination that Superior acted as the real estate contractor, the final consumer "who converts the personal property into real property," *id.,* is consistent with this opinion. According to the *Superior Soft Water* court, tax assessment should be based on when property is converted from personal to real property, not the method of financing.

7. The Administrative Rule referenced by petitioner is titled "Materials and Supplies Sold to

Owners, Contractors and Repairmen of Real Property Pursuant to Utah Code Ann. §§ 59–12–102 and 59–12–103." In pertinent part, that rule states:

A. Sale of tangible personal property to real property contractors and repairmen of real property is generally subject to tax.
1. The person who converts the personal property into real property is the consumer of the personal property since he is the last one to own it as personal property.

. . . . .

3. The sale of real property is not subject to the tax nor is the labor performed on real property. For example, the sale of a *completed home* or building is not subject to the tax, but sales of materials and supplies to contractors and subcontractors are taxable transactions as sales to final consumers.
Utah Admin.Code R865–58S–1 (1987–88) (emphasis added).

wording of the contract could not change a completed building into raw materials." [8]

However, the Utah Supreme Court has indicated that it considers modular building units to be construction materials. *BJ–Titan*, 842 P.2d at 827. The court listed modular units as an example of building materials consumed or used by contractors "in the construction of buildings and other facilities." *Id.* (citing *Tummurru Trades v. State Tax Comm'n*, 802 P.2d 715, 718–19 (Utah 1990)).

Furthermore, the Tax Commission did cite the administrative rule at issue, R865–58S–1, in the Conclusions of Law portion of its Final Decision. If the Tax Commission had elected to expressly analyze the rule in its decision, its interpretation would have been constrained by the requirement that interpretation of administrative rules must remain consistent with interpretation of governing statutes. *Robert H. Hinckley, Inc. v. State Tax Comm'n*, 17 Utah 2d 70, 404 P.2d 662, 668 (Utah 1965); *Fussell v. Department of Commerce*, 815 P.2d 250, 254 (Utah App.1991). Therefore, having found a statutory distinction between taxable tangible personal property and exempt improvements to real estate based on "affixation," it would have to interpret its rule exempting a "completed home" in a compatible manner. We note that, at the formal hearing, the auditor stated that modular units were not "completed homes" for purposes of the cited rule until they were attached to real property. Because this analysis is consistent with the Tax Commission's reasonable statutory inter-

pretation, the omission of further discussion about the rule is unobjectionable.

The Tax Commission's interpretation of Utah Code Annotated section 59–12–102(13) further indicates that, in the transactions at issue, viewed in the context of Utah Administrative Code R865–58S–1, petitioner acted as the supplier of materials; the unattached modular units constituted "materials or supplies;" and the dealer, who affixed the units creating a "completed home," was the real estate contractor converting personal property into real property.

■ Petitioner raised one additional argument to this court: if the Tax Commission determined that it was a supplier of materials, petitioner would then be relieved of any tax liability because the dealers as real estate contractors and ultimate consumers were responsible for paying the taxes owed. Utah courts have, in fact, deemed contractors to be consumers of building materials because they are "the last persons in the property chain to deal with the products before incorporation into a separate entity" and because they purchase building materials "for the purpose of changing their nature from personal to real property." [9] *BJ–Titan Servs.*, 842 P.2d at 827. As the ultimate consumer, the person who converts tangible personal property to realty, the contractor, has primary liability for the payment of sales tax. *Tummurru Trades*, 802 P.2d at 718; Utah Admin.Code R865–58S–1.

Although petitioner correctly noted the dealers' primary liability for the sales tax, Utah's tax statutes do not allow petitioner to avoid liability at this juncture.[10] Utah

---

8. The Tax Commission, on the other hand, relied upon another administrative rule providing that "[t]he tax is not upon the articles sold or furnished, but upon the *transaction.*" Utah Admin.Code R865–02S–1(B) (1987–88) (emphasis added). It stated that this rule switched the focus of a decision about the assessment of sales tax from the physical characteristics of the item at issue to the transaction itself. In the transactions at issue, the Tax Commission argues that petitioner elected to sell its modular units to dealers who then attach the units and sell them as completed homes to home buyers. The transaction at issue occurs prior to the units' attachment; the dealer, not petitioner is the

party legally responsible for converting personal property into realty.

9. In Utah, tax on tangible personal property used in the manufacturing process can only be collected once and is paid on the retail sale. *Chicago Bridge*, 839 P.2d at 306.

10. This liability is based upon a statutory provision making "[e]ach vendor ... responsible for the collection of the sales or use tax imposed under this chapter." Utah Code Ann. § 59–12–107(1)(a) (1987). Tax liability exists for "any person failing to pay any tax to the state or any amount of tax required to be paid to the state ... within the time required by this chapter." *Id.* at § 59–12–107(18).

courts have repeatedly held that while "[t]he primary obligation to pay the tax is on the ultimate consumer," a retailer who fails to collect the tax from the final consumer must still pay the State any sales tax owed. *Ralph Child Const. Co. v. State Tax Comm'n*, 12 Utah 2d 53, 362 P.2d 422, 424 (Utah 1961); *E.C. Olsen Co. v. State Tax Comm'n*, 109 Utah 563, 168 P.2d 324, 327 (Utah 1946). Because the Tax Commission may bring an action for "the failure to perform the statutory duty to make a return and remit the tax regardless of whether collected," a party responsible for collecting tax may not "escape his statutory liability by showing that he failed to collect the tax." *State Tax Comm'n v. Spanish Fork*, 99 Utah 177, 100 P.2d at 575, 576 (Utah 1940).

Thus, in this case, although the dealer, as the person who converts the personal property, was properly responsible for paying the tax, petitioner, as the vendor of personal property responsible for its collection and remittance, cannot now avoid tax liability. Petitioner had a statutory duty to remit that sales tax to the State even if it failed to collect it.

## CONCLUSION

The Tax Commission reasonably determined that when petitioner sold modular units to its dealers prior to the units permanent attachment, it sold tangible personal property, not improvements to real estate. We, therefore, affirm the Tax Commission's decision that petitioner owed sales tax on those transactions pursuant to petitioner's duty to collect and remit taxes.

GARFF and ORME, JJ., concur.